**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| NORTHWEST AIRLINES, INC., | Civil No. 11-368 (JRT/AJB) |
| Creditor, | |
| v. | |
| PROFESSIONAL AIRCRAFT LINE SERVICE, | **MEMORANDUM OPINION AND ORDER** |
| Debtor, | |
| v. | |
| WESTCHESTER FIRE INSURANCE COMPANY, | |
| Garnishee. | |

Aleava Rael Sayre and Steven P. Zabel, **LEONARD STREET AND DEINARD, PA**, 150 South 5th Street, Suite 2300, Minneapolis, MN 55402, for creditor Northwest Airlines, Inc.

Erin Fury Parkinson, **MCGLINCHEY STAFFORD, PLLC**, 601 Poydras Street, 12th Floor, New Orleans, LA 70130; Robert W. Vaccaro and Timothy R. Schupp, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South 7th Street, Suite 2900, Minneapolis, MN 55402, for garnishee Westchester Fire Insurance Company.

Northwest Airlines, Inc. ("NWA") brought this action seeking recovery from garnishee Westchester Fire Insurance Company ("Westchester"). Westchester issued an insurance policy to the Professional Aircraft Line Service ("PALS"), an aircraft maintenance company that failed to appear in this and several other related proceedings. Because NWA's aircraft was included within the class of items protected by a Clark

County Ordinance requiring hangarkeepers insurance, the compulsory insurance doctrine applies in Minnesota, and NWA's rights to recovery exist separate and apart from those of PALS, the Court grants NWA's motion to vacate Westchester's discharge of its retention obligation to NWA, initiate an ancillary garnishment proceeding, join Westchester as a party, and file a supplemental complaint.

## I.     PARTIES AND POLICY

NWA was a commercial air carrier. PALS was an aircraft maintenance company providing on-call aircraft maintenance services at Las Vegas McCarran International Airport ("LAS"). On May 1, 2000, NWA and PALS entered into a contract in which PALS agreed to provide NWA with aviation services and maintenance at LAS. (Aff. of Robert W. Vaccaro, Feb. 22, 2011, Ex. A, Docket No. 5.)

This garnishment action arose from an accident on February 6, 2002, when an aircraft maintenance permittee operating at LAS damaged an NWA aircraft while moving it to a runway staging area. The accident caused more than $10 million in physical damage, and loss of use of the aircraft. (Aff. of Steven P. Zabel, Feb. 28, 2011, Ex. 10 at Nos. 3-12, Docket No. 9.)

At the time of the accident, PALS owned a hangarkeepers insurance policy (the "Policy") issued by Westchester. (Vaccaro Aff. Ex. B.) All aircraft maintenance companies operating at LAS are required to maintain hangarkeepers liability insurance. This requirement is set forth in an ordinance in the Clark County Code, as follows:

> Each operator **not otherwise providing insurance as hereinafter set forth pursuant to an existing agreement with Clark County**, **Nevada**, shall, at

    its own expense, keep in force insurance of the following types and in not less than the following amounts . . . insuring itself against all liabilities for accidents arising out of or in connection with the insured's use and occupancy of and/or operations at the airport . . . and shall furnish to Clark County, Nevada, certificates evidencing such insurance . . .

    (c)    Hangarkeepers liability insurance in an amount adequate to cover any **non-owned property in the care, custody and control of the operator** on the airport, but in any event in an amount not less than five million dollars.

Clark County, Nev., Code of Ordinances § 20.10.020 (2011) ("the Ordinance") (emphasis added).[1]  The Policy provided liability insurance with limits of $5 million for each occurrence. (Vacarro Aff. Ex. B.)  The Policy's period was from April 18, 2001, to April 18, 2002, and included the following conditions in the event of occurrence, offense, or claim of suit:

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim . . .

    b.    If a claim is made or "suit" is brought against any insured, you must:

        (1)    Immediately record the specifics of the claim or "suit" and the date received; and

        (2)    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.    You and any other involved insured must:

        (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        . . .

---

[1] Available at http://search.municode.com/html/16214/level2/TIT20AI_CH20.10AITRAVSUPRREFECHRE.html.

>    (3)   Cooperate with us in the investigation, settlement or defense of the claim or "suit; and
>
>    (4)   Assist us, upon our request, in the enforcement of any right against any person or organizations . . .
>
> No person or organization has a right under this policy . . . to sue us on this policy unless all of its terms have been fully complied with . . .

(Zabel Aff. Ex. 14 at 4-5)

Westchester was first notified of the accident by NWA and NWA's insurer, Global Aerospace, Inc., by correspondence on November 4, 2003, sent to ACE USA ("ACE"), Westchester's claims handler. (Vaccaro Aff. Ex. C.) After receiving the notification, ACE, on behalf of Westchester, made several attempts to secure the cooperation of Phil Mendez, PALS's principal, with respect to defense of the claim, but the efforts were unsuccessful. On November 15, 2004, NWA/Global Aerospace's counsel indicated to ACE that it had served PALS with a lawsuit on October 1, 2004. (Zabel Aff. Ex. 13.) NWA/Global Aerospace's counsel demanded that Westchester, as the insurer of PALS, immediately tender the $5 million limit of the Policy.

On November 24, 2004, ACE advised PALS that Westchester was denying PALS coverage due to PALS's failure to provide any notice of the claim or lawsuit, and its failure to cooperate pursuant to the terms of the Policy. (Vaccaro Aff. Ex. D.) When PALS failed to respond to NWA's suit, NWA moved for a default judgment on December 31, 2004. Subsequently, on January 10, 2005, a Minnesota District Court granted NWA a default judgment against PALS for $10,635,412.67. (Zabel Aff. Ex. 10, Docket No. 9.)

**II.     NEVADA LITIGATION**

On November 22, 2005, Westchester commenced an action in the United States District Court in the District of Nevada, seeking a declaration that it had no obligation to provide coverage to PALS for the accident. (Zabel Aff. Ex. 16.) NWA subsequently moved to intervene in the action, stating that "[a] default in the declaratory judgment action [against PALS] would be fatal to [NWA's] interest in collecting the insurance proceeds." (Vaccaro Aff. Ex. G at 4.) The district court granted NWA's motion to intervene on March 27, 2006. Subsequently, the district court granted a default judgment in favor of Westchester, based on the failure of Mendez, PALS' principal, to appear at his deposition; the court also denied NWA's motion for a protective order, motion for trial by jury, and motion to compel depositions, as moot. (*Id.* at 10-11.)

On appeal from the grant of summary judgment to Westchester, the Ninth Circuit vacated the default judgment and remanded, finding it would be inappropriate to extend Mendez's default to NWA because NWA was not responsible for Mendez's conduct. *Westchester Fire Ins. Co. v. Nw. Airlines, Inc.*, 585 F.3d 1183, 1190 (9th Cir. 2009). On remand, the district court held that Westchester was entitled to judgment against PALS, but declined to address arguments as to NWA's direct right to obtain reimbursement for its loss from Policy proceeds. *Westchester Fire Ins. Co. v. Mendez*, No. 2:05-1417, 2010 WL 2694960, at *6 (D.N.V. July 1, 2010). The district court stated that:

> The compulsory insurance doctrine, like the third party beneficiary theory, is a direct claim that NWA theoretically could bring against Westchester, but it has nothing to do with whether Westchester owes any duty to Mendez. The claim exceeds the scope of NWA's intervention. Thus,

> Westchester's motion to strike is granted as to NWA's argument under the compulsory insurance doctrine, without prejudice to NWA raising this argument as a direct claim against Westchester in other litigation.

*Id.* Westchester then moved to correct the order to include NWA in the default judgment (Zabel Aff. Ex. 19), which motion the court denied on August 30, 2010. (Zabel Aff. Ex. 20.) NWA now moves to vacate Westchester's discharge of its retention obligations, for leave to initiate an ancillary garnishment proceeding, to join Westchester as a party to this action, and for leave to file a supplemental complaint against Westchester. (Docket No. 7.)

## ANALYSIS

### I.   STANDARD OF REVIEW

"If probable cause is shown [that a garnishee holds property, money, or other indebtedness by a title that is void as to the debtor's creditors], the motion [for an order making the garnishee a party to the civil action and granting the creditor leave to file a supplemental complaint] **shall** be granted." Minn. Stat. § 571.75 subd. 4 (emphasis added). In order for NWA to satisfy the probable cause threshold in the garnishment statute, "the creditor needs to allege facts that show that it is **possible** that the garnishee is liable for the debt and must support those facts with evidence that fairly and reasonably tends to show the existence of the facts alleged." *McGlothlin v. Steinmetz*, 751 N.W.2d 75, 81 (Minn. 2008) (emphasis added).

## II. DISCHARGE OF WESTCHESTER'S RETENTION OBLIGATIONS

NWA's motion includes a request to vacate Westchester's discharge of its retention obligations to NWA under Minnesota's garnishment statute. *See* Minn. Stat. §§ 571.71 *et seq*. Section 571.79 provides that after a garnishee serves a written disclosure on the creditor and debtor indicating it is not indebted to the debtor or does not possess any money or other property belonging to the debtor, it shall be discharged from further obligations to the creditor. However, subdivision h of § 571.79 provides that:

> The garnishee is not discharged if within 20 days of the service of the garnishee's disclosure or the return to the debtor of any disposable earnings, indebtedness money, or other property of the debtor, whichever is later, an interested person (1) serves a motion scheduled to be heard within 30 days of the service of the motion relating to the garnishment, or (2) serves a motion scheduled to be heard within 30 days of the service of the motion for leave to file a supplemental complaint against the garnishee, as provided under section 571.75, subdivision 4, and the court upon proper showing vacates the discharge of the garnishee.

NWA asserts that its service of the garnishment summons became effective on December 21, 2010, at the time it was hand-delivered to the Commissioner of Commerce of the state of Minnesota. (Zabel Aff. Ex. 1.) Westchester's twenty-day response period ended on January 10, 2011, and Northwest timely filed its motion for leave to initiate an ancillary garnishment proceeding on January 31, 2011 in Hennepin County District Court, requesting a hearing within thirty days. Minn. Stat. § 571.75 subd. 1; (Notice of Removal Ex. A at 18, Docket No. 1). The Court finds that NWA's submissions demonstrating service of process on the Commissioner of Commerce, Westchester, and PALS, and the timely filing of its motion in state court show NWA met the requirements of the statute, and vacates Westchester's discharge of its retention obligations. (*See*

Zabel Aff. Exs. 1-3); Minn. Stat. § 571.79 subd. h. The Court now considers whether NWA has shown probable cause that Westchester holds property, money, or other indebtedness by a title that is void as to NWA. *See* Minn. Stat. § 571.75 subd. 4.

### III. COMPULSORY INSURANCE DOCTRINE

NWA argues it is entitled to bring this action because the Ordinance required PALS to have hangarkeepers liability insurance, compulsory insurance preventing an insurer from denying recovery to a third party injured by an insured's actions. Under Minnesota law, "[t]he insurer on a compulsory insurance liability policy may be held liable to one injured by the insured notwithstanding the fact that the insured himself has lost his rights under the policy by failure to comply with its terms and conditions." *Nimeth v. Felling*, 165 N.W.2d 237, 239 (Minn. 1969); *see also Transamerican Ins. Co. v. Austin Farm Ctr., Inc.,* 354 N.W.2d 503, 507 (Minn. Ct. App. 1984). Further, "[t]he rights of the injured person are independent of and are not derived from those of the insured." *Nimeth*, 165 N.W.2d at 239. NWA asserts that PALS was required to keep hangarkeepers insurance to protect NWA's planes against damage and that the compulsory insurance doctrine applies and results in Westchester's liability for NWA's damages, even if PALS failed to meet the terms of the Policy.

#### A. Hangarkeepers Liability Insurance

The Ordinance requires the purchase of hangarkeepers liability insurance to protect "non-owned property in the care, custody and control of the permittee on the airport," in an amount not less than five million dollars, unless it is otherwise provided

for by a separate insurance policy with Clark County. (Zabel Aff. Ex. 11). "Permittee" is defined as "each . . . air servicing company that: (1) Operate at the airport; and either (2) Are not a party to a current lease agreement or operating permit with the County or; (3) Have executed and delivered to County a lease agreement or operating permit . . . ." (Vaccaro Aff. Ex. L.) The Court concludes that PALS is a permittee as defined by the Ordinance.

NWA argues that the hangarkeepers insurance is compulsory as to PALS because NWA's airplanes are within the class of items protected by the Ordinance, as "non-owned property in the care, custody and control of the permittee on the airport . . . ." (Zabel Aff. Ex. 11.) NWA alleges that although PALS carried other, non-compulsory insurance, its other policies did not include hangarkeepers insurance and thus PALS was required to have at least five million dollars worth of insurance coverage.

The only evidence of other insurance held by PALS is a Temporary Operating Permit ("Permit") between Clark County and PALS. The Permit requires PALS to maintain certain types of insurance, including commercial general liability, automobile liability, and property insurance. However, the Permit does **not** require PALS to maintain hangarkeepers liability insurance. Therefore, it does not fulfill the compulsory insurance obligation set forth by the Ordinance. Additionally, the fact that the Ordinance was intended to benefit Clark County does not affect the fact that the compulsory insurance for hangarkeepers liability was also clearly designed to protect aircraft owners such as NWA. (Zabel Aff. Ex. 11 ("Clark County, its officers, employees and volunteers, is to be named as additional insured on the above-referenced certificates of insurance.").)

NWA's airplane was within the class of items protected by the Ordinance, and PALS has not "otherwise" provided insurance adequate to meet the Ordinance's requirements. Thus, PALS was required to maintain hangarkeepers insurance to protect NWA's airplane.

### B.    Compulsory Insurance in Minnesota

Westchester argues that even if the Ordinance applies to NWA's airplane, Minnesota has not adopted the compulsory insurance doctrine outside the context of mandatory automobile insurance; Westchester distinguishes *Nimeth*, NWA's principal case, on this ground. In *Nimeth* the Minnesota Supreme Court interpreted a statute, the Safety Responsibility Act ("Act"), specifically directed at automobile insurance. *Nimeth*, 165 N.W.2d at 239. The Act provided:

> The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.

Minn. Stat. § 170.40 subd. 6(1).[2] Based on the statute, the *Nimeth* court allowed an injured third party to recover proceeds from an insurance policy despite the insured's inability to recover due to his breach of a policy condition. *Nimeth*, 165 N.W.2d at 239. Westchester argues that this specific rule should not apply in the context of aircrafts, and

---

[2] The statute was repealed in 1974 and replaced by the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41 *et seq*.

<tthat all of NWA's cited cases save one are distinguishable because they arose in the context of automobile liability insurance.

No case cited by Westchester, however, limits the compulsory insurance doctrine to automobile cases. Rather, they affirm the general principle that an insured's failure to comply with the terms of an insurance policy, which policy's ownership was compelled by statute and intended in part to benefit injured third parties, should not hinder the injured third party's right to recover. *See, e.g.*, *Nimeth*, 165 N.W.2d at 239 (discussing the specifics of the statute, and the general compulsory insurance doctrine, in separate paragraphs); *Royal Indem. Co. v. Olmstead*, 193 F.2d 451, 453 (9th Cir. 1951) ("Hence, it has been held that in cases involving compulsory insurance the insurer cannot urge lack of cooperation by the insured as a defense in a suit brought by an injured member of the public within the class sought to be protected by statute."). *See also Blanke v. Alexander*, 152 F.3d 1224, 1230 (10th Cir. 1998) ("[U]nder statutes requiring and controlling compulsory insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer.") (internal quotation marks omitted); *Van Horn v. Atlantic Mut. Ins. Co.*, 641 A.2d 195, 686 (Md. 1994) ("Attempts by insurance companies, purporting to exercise contract rights, to avoid the public policy of compulsory motor vehicle insurance with mandated coverages, have repeatedly been rejected . . . ."). In fact, in Westchester's declaratory judgment action, the Nevada district court provided an interpretation of the rule not limited to automobile insurance: "The compulsory insurance doctrine is designed to protect injured third parties, not the insured." *Westchester Fire Ins.*, 2010 WL 2694960, at *6.

Moreover, courts have applied the compulsory insurance doctrine outside the context of automobile insurance. *See, e.g.*, *Great Am. Ins. Co. v. Brad Movers, Inc.*, 382 N.E.2d 623, 627 (Ill. Ct. App. 1978) (suit relating to warehouseman's insurance policy, finding that compulsory insurance protected the public against negligent warehouse operators and disfavored use of contract defenses against innocent third parties). The Ordinance in this case specifically provides that insurance must be purchased on "non-owned property" in the care and control of the hangarkeeper. In the absence of any legislative history or case law interpreting the Ordinance, the Court concludes that the plain language of the Ordinance was designed to protect, among others, the aircraft's owner, and Minnesota law allows the compulsory insurance doctrine to apply in this situation.

Westchester also argues that the majority of NWA's claim has been paid by its own insurer, making this action akin to an insurance subrogation claim between two insurance companies. NWA agrees that the compulsory insurance doctrine can only be invoked by the victim of an accident, and not by an insurance company who has paid a claim on the victim's behalf. *See Leppla v. Am. Family Ins. Grp.*, 238 N.W.2d 592, 595-96 (Minn. 1976). However, NWA received $6,545,966.36 from its property insurer from the accident, (Vaccaro Aff. Ex. I), while the judgment amount in the Minnesota declaratory judgment action was $10,608,673. Thus, this suit involves an injured party who has not yet been made whole, as opposed to an insurance company attempting to recover money it has paid out to its insured. The Court will apply the compulsory insurance doctrine to Westchester under these circumstances.

## IV. NWA'S RIGHT TO RECOVERY

Westchester argues that even if NWA was intended to be a beneficiary of the compulsory insurance required in the Ordinance, and even if the compulsory insurance doctrine applies outside the automobile insurance context, in these circumstances, NWA has no rights separate and apart from those of PALS, whose rights were adjudicated in the separate declaratory judgment action in Nevada.  Because the district court in Nevada determined that Westchester had no duty to defend or indemnify PALS for the accident, Westchester argues it also has no duty to provide coverage or payment to NWA.  "[A] judgment creditor can obtain only those rights that the judgment debtor had against the garnishee."  *Poor Richards, Inc. v. Chas. Olson & Sons & Wheel Serv. Co., Inc.*, 380 N.W.2d 225, 228 (Minn. Ct. App. 1986) (citing *Gilbert v. Pioneer Nat'l Bank of Duluth*, 288 N.W. 153, 154 (Minn. 1939)).  Thus, Westchester argues, because the Nevada district court held that PALS' rights as debtor had been forfeited, NWA's right to collect insurance proceeds are similarly extinguished.

Though the general rule Westchester cites is accurate, the compulsory insurance doctrine is an accepted and recognized exception to that rule.  In *Royal Indemnity*, a car rental business purchased liability insurance as required by a city ordinance.  193 F.2d at 452-53.  When an injured third-party obtained a default judgment against the insured, the injured party also sued the insurer to collect on the policy.  The insurer argued that the claim was barred because the insured had not notified the insurer of the claim or suit.  *Id.*  The Ninth Circuit, however, concluded otherwise:

>An exception to the general rule has been made in situations where the insurance policy was issued to satisfy the requirements of a statute having as its purpose the protection of the public.  Under such circumstances the beneficial purpose of compulsory insurance would be thwarted in the event the insurer be permitted technical defenses under the policy relating to conditions wholly outside the ability of the injured person to secure performance of.  Hence, it has been held that in cases involving compulsory insurance the insurer cannot urge lack of cooperation by the insured as a defense in a suit brought by an injured member of the public within the class sought to be protected by statute.

*Royal Indem.*, 193 F.2d at 453.  Because the Court finds that the Ordinance compelled PALS to maintain five million dollars of hangarkeepers coverage for the benefit of aircraft owners, and is not limited to automobile insurance, the exception to the rule applies, and NWA does **not** stand in the same position as PALS with regard to insurance proceeds.  Thus, the Court finds that NWA has alleged facts demonstrating it is possible Westchester is liable for the debt, and grants its motion for leave to file an ancillary garnishment proceeding and complaint, and to add Westchester as a party to this action.  *See* Minn. Stat. § 571.75 subd. 4; *McGlothlin*, 751 N.W.2d at 81.

## V.     RES JUDICATA

Res judicata applies as an absolute bar to a subsequent claim when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).  "All four prongs must be met for res judicata to apply." *Id.*  Dismissal without prejudice is a dismissal that does not operate as

an adjudication on the merits, and thus does not have a res judicata effect. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).

Westchester argues that because NWA intervened in the Nevada action, and chose not to appeal the district court's ruling granting in part Westchester's motion to strike NWA's motion for summary judgment, it is bound by the court's coverage determination concerning PALS in the declaratory judgment action. (Zabel Aff. Ex. 18 at 14.) Westchester argues that NWA's claim must fail because after the decision of the Nevada district court, Westchester has no property of PALS that is attachable. Westchester also argues that NWA's failure to file a pleading setting out its claims against PALS in the Nevada action should have a preclusive effect because NWA could have set forth any direct, independent claim, but failed to do so.

Res judicata does not apply to any matter in this case because the Nevada district court did not rule on the merits of NWA's present claim, and the court specifically stated that its decision was without prejudice to NWA raising direct claims against Westchester in other litigation. *Westchester Fire Ins. Co.*, 2010 WL 2694960, at *6 ("NWA's interest in this litigation . . . is to protect any proceeds Westchester may owe to Mendez . . . . The compulsory insurance doctrine . . . is a direct claim that NWA theoretically could bring against Westchester, but . . . [t]he claim exceeds the scope of NWA's intervention . . . . Westchester's motion to strike is granted as to NWA's argument under the compulsory insurance doctrine, without prejudice to NWA raising this argument as a direct claim against Westchester in other litigation."). Further, the Nevada district court specifically stated that NWA's intervention did not include a direct claim. *See id.* Though

Westchester obtained a default judgment against Mendez, the issue in **this** case is not whether Mendez can recover, but whether NWA can recover irrespective of Mendez's failure to comply with the Policy. Thus, the Court finds res judicata does not apply.

## VI.     RELIEF PURSUANT TO MINN. STAT. § 571.90 FOR BAD FAITH BY A CREDITOR

Minnesota Statute § 571.90 provides that "[a]ny action by a creditor made in bad faith . . . renders the garnishment void and the creditor liable to the debtor named in the garnishment in the amount of $100, actual damages, and reasonable attorney's fees and costs." The statute defines a "debtor" as "a party against whom the creditor has a claim for the recovery of money in the civil action whether that party is the plaintiff, defendant, or other party in the civil action." Minn. Stat. § 571.712 subd. 2(b).

Westchester argues that as a party against whom NWA is claiming the recovery of money, Westchester should be considered a "debtor" for purposes of assessing the penalty under the statute. The bad faith that Westchester alleges includes: the underlying injury occurred nearly ten years ago, NWA secured a default judgment against PALS based on evidence that post-dated the accident, and NWA fails to cite controlling law and references a set of inapposite cases without specifically arguing for the good faith extension of their holdings to this case. But no evidence suggests bad faith by NWA. The cases cited by NWA are on point and controlling, or at least highly relevant. The Court does not find NWA acted in bad faith and denies Westchester's request to award it $100, reasonable attorney's fees, or costs incurred in connection with this action.

## ORDER

Based on the foregoing and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Northwest Airlines, Inc.'s Motion to Alter/Amend Supplemental Pleadings to Initiate Ancillary Garnishment Proceedings [Docket No. 7]:

1. To initiate ancillary garnishment proceedings is **GRANTED**;

2. To join garnishee Westchester Fire Insurance Company as a party is **GRANTED**;

3. For leave to file a supplemental complaint against Westchester Fire Insurance Company is **GRANTED**;

4. To vacate Westchester Fire Insurance Company's discharge of its retention obligation to Northwest is **GRANTED**.

DATED:  July 18, 2011  
at Minneapolis, Minnesota.

                                                               s/ John R. Tunheim  
                                                                  JOHN R. TUNHEIM  
                                                           United States District Judge