# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| NORTHWEST AIRLINES, INC., | Civil No. 11-368 (JRT/TNL) |
| Creditor, | |
| v. | |
| PROFESSIONAL AIRCRAFT LINE SERVICE, | **MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT MOTIONS** |
| Debtor, | |
| v. | |
| WESTCHESTER FIRE INSURANCE COMPANY, | |
| Garnishee. | |

Steven P. Zabel, **LEONARD STREET AND DEINARD, P.A.**, 150 South Fifth Street, Suite 2300, Minneapolis, MN, 55402, for creditor Northwest Airlines, Inc.

Robert W. Vaccaro, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN, 55402, for garnishee Westchester Fire Insurance Company.

Northwest Airlines, Inc. ("NWA") brought this garnishment action seeking recovery from garnishee Westchester Fire Insurance Company ("Westchester"). NWA seeks to recover proceeds from an insurance policy that Westchester issued to the Professional Aircraft Line Service ("PALS"). PALS was an aircraft maintenance company that negligently handled an NWA aircraft. NWA secured a default judgment

against PALS in state court based on the incident.  NWA bases this garnishment action on the default judgment against PALS.

The parties have both moved for summary judgment.  For the reasons explained below, the Court will grant summary judgment to NWA and deny summary judgment to PALS.

## BACKGROUND

### I.    THE PARTIES

NWA was a commercial air carrier.  PALS was an aircraft maintenance company providing on-call aircraft maintenance services at Las Vegas McCarran International Airport ("LAS"), and was owned and operated by Phil Mendez.  On May 1, 2000, NWA and PALS entered into a contract in which PALS agreed to provide NWA with aviation services and maintenance at LAS.  (First Aff. of Robert W. Vaccaro, Ex. A, Feb. 22, 2011, Docket No. 5.)  Westchester is an insurance company from whom PALS purchased an Airport Owners and Operators General Liability Policy.  (*Id.*, Ex. B.)

### II.    THE PERMIT

PALS entered into an agreement with Clark County to operate at LAS by way of a Temporary Operating Permit ("permit") dated January 30, 2001.  The permit provided, in relevant part:

> The county shall have the right to require PALS to increase the type or amount of coverage required, and that such insurance coverage would include, but not be limited to:

a) <u>Commercial General Liability</u>: On an "occurrence" basis, coverages must include Premises Operations, Products and Completed Operations, Personal & Advertising Injury, $5 million ($5,000,000) "per occurrence, per location"; Fire Damage, on any one fire fifty thousand dollars ($50,000).

(Fourth Aff. of Robert W. Vaccaro, Ex. A at 51, July 31, 2012, Docket No. 57.)

## III.    THE ACCIDENT

On February 6, 2002, PALS' employees moving an NWA aircraft at LAS failed to ensure that the brakes were adequately pressurized, causing a collision that resulted in more than $10 million in physical damage and loss of use of the aircraft.  (First Aff. of Steven P. Zabel, Ex. 10 at Nos. 3-13, Feb. 28, 2011, Docket No. 9.)

## IV.    THE ORDINANCE

All aircraft maintenance companies operating at LAS are required to maintain hangarkeepers liability insurance.  This requirement is set forth in an Ordinance in the Clark County Code ("Ordinance"), which provides, in relevant part:

Each operator[1] not otherwise providing insurance as hereinafter set forth pursuant to an existing agreement with Clark County, Nevada, shall, at its

---

[1] At the time this action was commenced, the relevant portion of Clark County Ordinance § 20.10.020 read, "[e]ach permitee not otherwise providing insurance. . . ."  In 2011, the Ordinance was amended, and now reads, "[e]ach operator not otherwise providing insurance. . . ."  Clark County, Nev., Code of Ordinances § 20.10.020 (2011).  Though the law has been amended since this case was commenced, the outcome of the case is not affected by the amendment, so the Court will cite the current version of the statute.  *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 576 (Minn. 2000); *see also McCelland v. McClelland*, 393 N.W.2d 224, 226-27 (Minn. App. 1986) (finding that "a court is to apply the law in effect at the time it renders its decision, unless doing so would alter rights that had matured or become unconditional, would impose new and unanticipated obligations on a party, or would work some other injustice due to the nature and identity of the parties.").

own expense, keep in force insurance of the following types and in not less than the following amounts, issued by a company or companies of sound and adequate financial responsibility, insuring itself against all liabilities for accidents arising out of or in connection with the insured's use and occupancy of and/or operations at the airport . . . :

    (a)    Aircraft liability insurance and/or comprehensive commercial aviation general public liability insurance for claims of property damage, bodily injury, or death allegedly resulting from the operator's activities into, on, and leaving any part of the McCarran International Airport or Airport System, in an amount not less than one hundred fifty million dollars, per occurrence.

    . . .

    (c)    Hangarkeepers liability insurance in an amount adequate to cover any non-owned property in the care, custody and control of the operator on the airport, but in any event in an amount not less than five million dollars, combined single limit.

Clark County, Nev., Code of Ordinances § 20.10.020 (2011).[2]  The term "operator," as it is used in the Ordinance, means "each air transportation company, aviation support provider, governmental agency, other airport tenant(s), or user(s) that uses the airport facilities regardless if the use is for commercial aviation or private aviation purposes." *Id.* at § 20.10.005.

## V.    THE POLICY

The policy issued to PALS by Westchester provided liability insurance with limits of $5 million for each occurrence.  (First Vaccaro Aff., Ex. B at 3.)  The policy's period

---

[2]    The Clark County Code of Ordinances is available at http://library.municode.com/index.aspx?clientId=16214&stateId=28&stateName=Nevada.

was from April 18, 2001 to April 18, 2002.  It included the following conditions in the

event of occurrence, offense, or claim of suit:

> a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .

> b.  If a claim is made or "suit" is brought against any insured, you must:

> > (1)  Immediately record the specifics of the claim or "suit" and the date received; and

> > (2)  Notify us as soon as practicable.

> > You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

> c.  You and any other involved insured must:

> > (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

> > . . .

> > (3)  Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

> > (4)  Assist us, upon our request, in the enforcement of any right against any person or organizations . . .

> . . . .

> No person or organization has a right under this policy:
> . . . .

> b.  To sue us on this policy unless all of its terms have been fully complied with.

(First Vaccaro Aff., Ex. B at 19-20.)

## VI.    THE MINNESOTA LITIGATION

On November 4, 2003, NWA's insurer, Global Aerospace, Inc., first notified Westchester of the accident by a facsimile sent to ACE USA ("ACE"), Westchester's claims handler.  (First Vaccaro Aff., Ex. C.)   ACE then attempted to secure the cooperation of PALS' principal, Phil Mendez, with respect to defense of the claim, but ACE was ultimately unsuccessful.

On October 1, 2004, NWA served PALS with a summons and complaint in Minnesota state court, seeking to recover for the damages that NWA incurred as a result of the accident.  (First Zabel Aff., Ex. 10 at 3.)  On November 15, 2004, NWA/Global Aerospace's counsel advised ACE that NWA had brought a claim against PALS in Minnesota state court.  (*Id.*, Ex. 13.)  NWA/Global Aerospace's counsel demanded that, as PALS' insurer, Westchester immediately tender the $5 million limit of the policy. (*Id.*)  On November 24, 2004, ACE advised PALS that Westchester was denying PALS coverage due to PALS' failure to provide any notice of the claims, and its failure to cooperate pursuant to the terms of the policy.  (First Vaccaro Aff., Ex. D.)

When PALS failed to respond to NWA's suit, NWA moved for a default judgment on December 31, 2004.  On January 10, 2005, the Minnesota state court granted NWA's motion for a default judgment against PALS in the amount of $10,635,412.67.  (First Zabel Aff., Ex. 15.)

## VII.   THE NEVADA LITIGATION

On November 22, 2005, Westchester commenced an action in United States District Court for the District of Nevada, seeking a declaration that it had no obligation to provide coverage to PALS for the accident.  (First Zabel Aff., Ex. 16.)  NWA intervened as a plaintiff, stating that "[a] default in the declaratory judgment action [against PALS] would be fatal to [NWA's] interest in collecting the insurance proceeds."  (First Vaccaro Aff., Ex. G at 4.)  The district court granted NWA's motion to intervene on March 27, 2006.  Subsequently, the court granted Westchester's motion for default judgment against PALS based on the repeated failure of Mendez to appear at his deposition.  (*Id.*, Ex. G at 4-5.)   Based on the default judgment, the court granted Westchester's claim for a declaratory judgment, finding that Westchester had no insurance obligations for the damage to NWA's plane.  The court also denied NWA's motion for leave to file an intervenor answer.  (*Id.*, Ex. G at 10-11.)

On appeal from the grant of default judgment to Westchester, the Ninth Circuit vacated the default judgment and remanded, finding it would be inappropriate to extend the consequences of Mendez's default to NWA because NWA was not responsible for Mendez's conduct.  *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189-90 (9th Cir. 2009).

On remand, the district court held that Westchester was entitled to judgment against PALS, but declined to address NWA's compulsory insurance arguments as to NWA's direct right to obtain reimbursement from Westchester for its loss.  *Westchester*

*Fire Ins. Co. v. Mendez*, Civ. No. 2:05-1417, 2010 WL 2694960, at *6 (D. Nev. July 1, 2010).  The district court stated that:

> The compulsory insurance doctrine, like the third party beneficiary theory, is a direct claim that NWA theoretically could bring against Westchester, but it has nothing to do with whether Westchester owes any duty to Mendez.  The claim exceeds the scope of NWA's intervention.  Thus, Westchester's motion to strike is granted as to NWA's argument under the compulsory insurance doctrine, without prejudice to NWA raising this argument as a direct claim against Westchester in other litigation.

*Id.*  Westchester then moved to correct the order to include NWA in the default judgment.  (First Zabel Aff., Ex. 19.)  The district court denied that motion on August 30, 2010.  (*Id.*, Ex. 20.)

## VIII.  THE PRESENT ACTION

On December 16, 2010, NWA filed a garnishment action against Westchester in Minnesota state court, seeking to garnish the proceeds of the policy.  (Notice of Removal, Ex. A, Part 1 at 2, Feb. 15, 2011, Docket No. 1.)  On December 21, 2010, NWA sent the garnishment summons and pleadings to Westchester by certified mail to 1325 Avenue of the Americas, New York, New York 10019.  (Supp. Aff. of Steven P. Zabel, Ex. 8 at 38-40, Aug. 16, 2012, Docket No. 61.)   NWA obtained the aforementioned address from ACE Group's website, which is Westchester's parent company.  (Supp. Zabel Aff., Ex. 12 at 60.)  On January 20, 2011, NWA's counsel resent the garnishment summons and pleadings to Westchester's correct address in Pennsylvania, and Westchester received the summons on January 25, 2011.

Westchester removed to this Court on February 15, 2011.  NWA then moved the Court to vacate Westchester's discharge of its retention obligations, for leave to initiate an ancillary garnishment proceeding, to join Westchester as a party to this action, and for leave to file a supplemental complaint against Westchester.  This Court granted NWA's motions in their entirety.  (Order, July 18, 2011, Docket No. 17.)

## ANALYSIS

## I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  *Davenport*

*v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II.   CHOICE OF LAW ANALYSIS

As an initial matter, the Court must determine whether Nevada law or Minnesota law governs the substantive issues of this case.  In diversity cases, the Court applies the forum state's choice-of-law analysis to determine which state's substantive law will govern.  *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595-96 (8th Cir. 2007).  Under Minnesota law, courts do not conduct a choice of law analysis unless it is first "'determine[d] that a conflict exists between the laws'" of the different states that might govern the issues.  *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 715 F. Supp. 2d 871, 875 (D. Minn. 2010) (quoting *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000)).  "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case."  *Nodak*, 604 N.W.2d at 94.  If the Court concludes that there is no actual conflict between the laws of two states, the inquiry proceeds no further and the Court applies the law of the forum. *Best Buy Stores*, 715 F. Supp. 2d at 875-76.

Westchester maintains that Nevada law governs the compulsory insurance doctrine issues before the Court.[3]  The Nevada Supreme Court has not addressed the compulsory insurance doctrine questions that are at issue in this case.  When a state's

---

[3] Westchester concedes that the res judicata analysis is the same under both Nevada law and Minnesota law, and thus no conflict exists as to that issue.

highest court has not addressed the precise question of state law at issue, a federal court must decide what the highest state court would probably hold were it to decide the issue. *TNT Speed & Sport Center, Inc., v. American Ins. Co.*, 114 F.3d 731, 734 (8th Cir. 1997). Therefore, this Court must predict how the Nevada Supreme Court would rule if it were to decide the issues.[4]

Nevada law in this area is similar to Minnesota law in almost all respects. First, both states have codified the compulsory insurance doctrine as it relates to automobile insurance.[5] Most courts that have addressed the issue speak of the doctrine in broad terms, focusing on the injured party rather than the type of insurance at issue.[6] As such, this Court held that, under Minnesota law, the doctrine applies broadly to other insurance

---

[4] In determining how a state supreme court "would probably hold if it were presented with this issue, it [i]s entirely proper for the district court to consider relevant precedents from other jurisdictions." *TNT Speed & Sport Ctr.*, 114 F.3d at 734; s*ee also Nelson Distrib., Inc. v. Stewart-Warner Indus. Balancers, a Div. of Stewart Warner Corp.*, 808 F. Supp. 684, 687 (D. Minn. 1992) ("In making this determination, a federal court also may consider restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule.'" (quoting *Grantham & Mann, Inc. v. Am. Safety Prod., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987))).

[5] *See* Nev. Rev. Stat. § 485.3091(5)(a); Minn. Stat. §§ 65B.41, *et seq.*

[6] *See Nimeth v. Felling*, 165 N.W.2d 237, 239 (Minn. 1969) (discussing the insurance statute at issue and the compulsory insurance doctrine in general in separate paragraphs); *Royal Indem. Co. v. Olmstead*, 193 F.2d 451, 453 (9th Cir.1951) ("Hence, it has been held that in cases involving compulsory insurance the insurer cannot urge lack of cooperation by the insured as a defense in a suit brought by an injured member of the public within the class sought to be protected by statute."); *Blanke v. Alexander,* 152 F.3d 1224, 1230 (10th Cir.1998) ("[U]nder statutes requiring and controlling compulsory insurance, a direct or joint right is created in favor of the injured person against both the insured and the insurer.") (internal quotation marks omitted); *Van Horn v. Atlantic Mut. Ins. Co.*, 641 A.2d 195, 203 (Md. 1994) ("Attempts by insurance companies, purporting to exercise contract rights, to avoid the public policy of compulsory motor vehicle insurance with mandated coverages, have repeatedly been rejected . . .").

contexts, and the fact that the doctrine was adopted in Minnesota's motor vehicle code does not limit the doctrine only to the automobile insurance context. *Northwest Airlines, Inc. v. Prof'l Aircraft Line Serv.*, Civ. No. 11-368, 2011 WL 2837677, at *5-6 (D. Minn. July 18, 2011).

Westchester argues that Nevada, unlike Minnesota, would not apply the doctrine outside the scope of automobile insurance. However, Westchester is unable to point to any Nevada law indicating that the Nevada Supreme Court would not apply the compulsory doctrine outside the scope of automobile insurance, nor has the Court found any such law. On the contrary, the Nevada district court cited favorably to cases applying the compulsory insurance doctrine outside the motor vehicle context. *Westchester Fire Ins.*, 2010 WL 2694960, at *5 (citing *Great Am. Ins. Co. v. Brad Movers, Inc.*, 382 N.E.2d 623, 627 (Ill. Ct. App. 1978) (finding that compulsory insurance in warehouseman's insurance policy protected the public against negligent warehouse operators and disfavored use of contract defenses against innocent third parties)).

The Court finds that there is no conflict between Nevada law and Minnesota law on the issue of compulsory insurance. Because no conflict exists between Nevada and Minnesota law, the Court will apply Minnesota law, the law of the forum, to the issues before the Court.

### III.    THE COMPULSORY INSURANCE DOCTRINE

Under Minnesota law, "a judgment creditor can obtain only those rights that the judgment debtor had against the garnishee." *Poor Richards, Inc. v. Chas. Olson & Sons & Wheel Serv. Co.*, 380 N.W.2d 225, 228 (Minn. Ct. App. 1986) (citing *Gilbert v. Pioneer Nat'l Bank of Duluth*, 288 N.W. 153, 154 (Minn. 1939)).   Westchester argues that because the Nevada district court held that PALS lost its rights under the policy for failing to comply with policy conditions, NWA's right to collect insurance proceeds as a judgment creditor has also been lost.   However, "[t]he insurer on a compulsory insurance liability policy may be held liable to one injured by the insured notwithstanding the fact that the insured himself has lost his rights under the policy by failure to comply with its terms and conditions." *Nimeth*, 165 N.W.2d at 239; *see also Transamerican Ins. Co. v. Austin Farm Ctr., Inc.*, 354 N.W.2d 503, 507 (Minn. Ct. App. 1984).   The compulsory insurance doctrine is therefore an exception to the general rule that an injured third-party plaintiff suing an insurance company is subject to the same defenses that the insurer has against the insured.   *Royal Indem.*, 193 F.2d at 453 ("Hence, it has been held that in cases involving compulsory insurance the insurer cannot urge lack of cooperation by the insured as a defense in a suit brought by an injured member of the public within the class sought to be protected by statute.").

There are two elements that must be met in order for the compulsory insurance doctrine to apply:   (1) the insurance policy at issue must have been purchased to comply with the requirements of a statute; and (2) the plaintiff must be an injured member of the public within the class protected by the statute.   *Id.*; *Nimeth*, 165 N.W.2d at 239.

**A.    Compliance with the requirements of Clark County Ordinance § 20.10.020**

The Court must first determine whether PALS purchased the hangarkeepers liability policy from Westchester in order to satisfy the requirements of Clark County Ordinance § 20.10.020.  *Royal Indem.*, 193 F.2d at 453;  *Nimeth*, 165 N.W.2d at 239. Clark County Ordinance § 20.10.020 requires that each operator at LAS keep certain types of insurance, including hangarkeepers liability insurance in an amount not less than $5 million.  "Operator" is defined in the Ordinance as "each. . . aviation support provider, . . . other airport tenant(s), or user(s) that uses the airport facilities regardless if the use is for commercial aviation or private aviation purposes."   Clark County Ordinance § 20.10.005.  The Court finds that, as an on-call aircraft maintenance servicer and user of the airport facilities, PALS was an operator at LAS, and was therefore required to keep insurance in the types and amounts prescribed by the Ordinance.

Before describing the particular types of insurance each operator is required to carry, the Ordinance provides, "Each operator **not otherwise providing insurance as hereinafter set forth pursuant to an existing agreement with Clark County**, Nevada, shall [obtain the following types of insurance policies]."  *Id.* at § 20.10.020 (emphasis added).  Westchester argues that PALS had already entered into an agreement with Clark County by way of its permit, and thus PALS was exempted from the requirements of the Ordinance.

The Court finds that the above language exempts operators from its requirements with respect to a particular type of insurance only to the extent that those operators are

subject to county agreements that require them to obtain that type of insurance.  Parties with agreements that are silent as to hangarkeepers liability insurance, for example, are not exempted from the Ordinance's requirements regarding hangarkeepers liability insurance.  Because the agreement between PALS and Clark County did not require PALS to obtain hangarkeepers coverage, PALS was bound to comply with the provisions of the Ordinance.  This interpretation is supported by the record.  In addition to the hangarkeepers liability policy, PALS purchased Commercial General Liability coverage of $5 million per occurrence.  Yet, the Ordinance required that operators purchase CGL coverage of not less than $150 million per occurrence.  The discrepancy is explained by the fact that the permit required PALS to purchase CGL insurance, thereby exempting PALS from the CGL requirements in the Ordinance.  Because the Ordinance required PALS to purchase hangarkeepers liability insurance, the Court finds that the Ordinance was compulsory upon PALS.

### B.     The Class Sought to be Protected by the Ordinance

Next, the Court must consider whether NWA is within the class of persons protected by Clark County Ordinance § 20.10.020.  *Royal Indem.*, 193 F.2d at 454.  The Ordinance provides that insurance must be purchased on "non-owned property in the care, custody and control" of operators at LAS.  As "non-owned property in the care, custody and control of" PALS, an operator at LAS, NWA's airplanes are within the class of items sought to be protected by the Ordinance.  As such, NWA is within the class of members of the public protected by the Ordinance.

Westchester argues that the compulsory insurance doctrine is not designed to protect sophisticated parties like NWA.  Westchester provides no case law, and the Court has found none, to support the proposition that the level of sophistication of an injured party affects whether the compulsory insurance doctrine can be invoked.  The Court finds that NWA is within the class sought to be protected by Clark County Ordinance § 20.10.020, despite the fact that it is also a sophisticated party that was in a contractual relationship with PALS at the time of the accident.  *See Dave Ostrem Imports, Inc. v. Globe Am. Cas./GRE Ins. Group*, 586 N.W.2d 366, 367, 368 (Iowa 1998) (allowing a corporation that suffered property damage to recover policy proceeds from an insurer based on the compulsory insurance doctrine articulated in *Royal Indem.*).

Next, Westchester argues that in enacting the Ordinance, Clark County was protecting its own interests, not enacting a statute to protect parties like NWA.  That the Ordinance provides a benefit to Clark County does not negate the fact that the Ordinance also protects injured third parties such as NWA.  Indeed, courts have generally utilized broad and sweeping language when describing the requirement that a plaintiff be within the class sought to be protected by the statute, focusing on the injured party in general. *See, e.g., Northwest*, 2011 WL 2837677, at *6 (finding that the doctrine is designed to protect victims of accidents like NWA); *Kolencik v. Progressive Preferred Ins. Co.*, No. 1:04-CV-3507, 2006 WL 738715, at *4 (N.D. Ga. Mar. 17, 2006) ("The purpose of this insurance 'is not for the benefit of the insured. . . but for the sole benefit of those who may have a cause of action for damages for the negligence of the [insured].'" (internal quotation marks omitted)).

-16-

Because Clark County Ordinance § 20.10.020 required PALS to purchase the hangarkeeper's liability insurance policy, and because NWA is within the class of members of the public sought to be protected by the Ordinance, the Court finds that the compulsory insurance doctrine allows NWA to recover policy proceeds from Westchester despite the fact that PALS defaulted on the insurance contract.

## IV.    RES JUDICATA

Next, the Court must decide if NWA is barred from bringing this claim against Westchester because of the doctrine of res judicata.  The test to determine if res judicata bars a claim consists of four parts: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter.  *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).  "All four prongs must be met for res judicata to apply."  *Id.*

It is clear that the federal litigation in Nevada involved the same set of factual circumstances and the same parties as the present action.  Therefore, the Court focuses on the third and fourth elements of the test: whether the Nevada declaratory judgment was binding and final as applied to NWA, and whether NWA could have litigated this claim during the federal litigation in Nevada district court.

### A.      Finality of the Nevada Declaratory Judgment

It is well established that dismissal without prejudice does not operate as an adjudication on the merits, and thus does not implicate res judicata principles. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990).

On remand from the Ninth Circuit, the Nevada court refused to rule on the portions of NWA's claims that discussed the compulsory insurance doctrine, and dismissed "NWA's arguments under the doctrine without prejudice to NWA raising the argument as a direct claim against Westchester in other litigation." *Westchester Fire Ins.*, 2010 WL 2694960, at *6. The district court unequivocally held that no part of its opinion delineated the rights between NWA and Westchester, because for the court to do so would exceed the scope of NWA's intervention. *Id.* The court made clear that it was limiting the relief it was granting only to Westchester, and that its decision had "nothing to do with" whether NWA could recover on a compulsory insurance or third-party beneficiary-type claim. *Id.* Additionally, the court denied Westchester's Motion to include NWA in the default judgment. (First Zabel Aff., Ex. 19.)

The Court therefore finds that the Nevada declaratory judgment was not final as applied to NWA.

### B.      Full and fair opportunity for litigation on the merits

The compulsory insurance doctrine arguments were put into issue by NWA on remand, but the Nevada court refused to adjudicate them. Matters in issue in the first proceeding but not decided on remand are not barred by res judicata. *See Baker Grp.*

*L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 887 (8th Cir. 2000) ("[A] judgment is not res judicata as to any matters which a court expressly refused to determine . . . or which it directed to be litigated in another forum or in another action." (internal quotation marks and emphasis omitted)).

The Court finds that NWA did not have a full and fair opportunity to litigate in the Nevada action. As such, res judicata does not bar NWA's claim.

## V.    STATUTE OF LIMITATIONS

### A.    Effective Service

Next, the Court must determine whether NWA's action is barred by the statute of limitations. Under Minn. R. Civ. P. 3.01, "[a] civil action is commenced against each defendant (a) when the summons is served upon that defendant, or (b) at the date of acknowledgement of service if service is made by mail . . ."

As a foreign insurance company, Westchester was required to appoint the Minnesota Commissioner of Commerce as its attorney for service of process. Minn. Stat. § 60A.19, subd. 3. Pursuant to section 60A.19, subdivision 4, service on an insurance company shall be made in compliance with Minn. Stat. § 45.028, subd. 2, which provides that, "[s]ervice of process under this section . . . is not effective unless: (1) the plaintiff . . . sends notice of the service and a copy of the process by certified mail to the defendant or respondent at the last known address."

Minnesota courts have yet to define the scope of the "last known address" requirement of Minn. Stat. § 45.028. However, in serving process, "all that is required is

that plaintiff comply in good faith, based on the information he has been able to secure." *Barth v. Nitke*, 126 N.W.2d 452, 456 (Minn. 1964). "The law does not impose on plaintiff an obligation to track down defendant if the address used was furnished by the defendant himself." *Id.*

The New York address that NWA originally mailed service to was essentially furnished by Westchester itself, as it was listed as the current address for Westchester on Westchester's parent company's website. As such, the Court finds NWA effectively served Westchester on December 21, 2010, when NWA mailed service to Westchester's prior New York address.

### B.      Applicable limitations period

Finally, the Court must decide whether service was effective within the applicable statutory limitations period. NWA argues that the ten year limitations period set forth in Minn. Stat. § 550.01[7] governs this action, while Westchester argues the six-year limitations period set forth in Minn. Stat. § 541.05[8] governs this action.

NWA obtained a default judgment against PALS on January 10, 2005. On December 21, 2010, NWA successfully served Westchester. Thus, service was effective within both the ten year limitation of Minn. Stat. § 550.01 and the six year limitation

---

[7] Minn. Stat. § 550.01 provides, "[t]he party in whose favor a judgment is given, or the assignee of such judgment, may proceed to enforce the same, at any time within ten years after the entry thereof, in the manner provided by law."

[8] Minn. Stat. § 541.05 provides that actions "upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed" must be brought within six years.

period of Minn. Stat. § 541.05.  It is therefore not necessary to determine which statute of

limitations period governed this action.  The Court finds NWA's claim is not time barred

by either statute.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Creditor Northwest Airlines, Inc.'s Motion for Summary Judgment [Docket

No. 48] is **GRANTED**.

2.      Garnishee Westchester Fire Insurance Company's Motion for Summary

Judgment [Docket No. 54] is **DENIED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   March 25, 2013                          _____s/ _John H. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                     United States District Judge