UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NORTHWEST AIRLINES, INC., *Creditor*, | Civil No. 11-368 (JRT/TNL) |
| Plaintiff, | |
| v. | |
| PROFESSIONAL AIRCRAFT LINE SERVICE, *Debtor*, | **MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION TO CORRECT OR AMEND JUDGMENT** |
| Defendant, | |
| v. | |
| WESTCHESTER FIRE INSURANCE COMPANY, | |
| Garnishee. | |

Brian W. Thomson, Aleava Rael Sayre, Jeffrey A. Ehrich, and Steven P. Zabel, **LEONARD STREET AND DEINARD, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for plaintiff.

Erin Fury Parkinson, **MCGLINCHEY STAFFORD, PLLC**, 601 Poydras Street, Twelfth Floor, New Orleans, LA 70130; and Robert W. Vaccaro and Timothy R. Schupp, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402 for garnishee.

Northwest Airlines, Inc. ("NWA") secured a default judgment in Minnesota state court against defendant Professional Aircraft Line Service ("PALS"), an aircraft maintenance company, after PALS negligently handled an NWA aircraft. NWA now brings this garnishment action against garnishee Westchester Fire Insurance Company ("Westchester"), seeking to recover proceeds from an insurance policy that Westchester issued to PALS.

On March 25, 2013, the Court granted summary judgment in favor of NWA, finding that the compulsory insurance doctrine allowed NWA to recover the proceeds of Westchester's insurance policy, despite PALS' failure to notify Westchester of the underlying negligence claim. (Mem. Op. & Order, Mar. 25, 2013, Docket No. 68.) Although the March 25 order entered judgment in NWA's favor, it did not specify an amount of damages. (*See id.* at 21.) NWA now brings a motion under Federal Rule of Civil Procedure 60(a), requesting that the Court correct or amend the judgment to reflect an award of damages in the amount of $5,066,806.57, which includes postjudgment interest on the state court default judgment, plus prejudgment interest in NWA's favor. Because the March 25 entry of judgment was incomplete in failing to include a damages award, the Court will grant NWA's motion to amend. The Court will, however, reduce NWA's damages request in light of the insurance policy's prohibition on the recovery of postjudgment interest.

## BACKGROUND[1]

### I. THE UNDERLYING ACCIDENT

On February 6, 2002, PALS' employees, while moving one of NWA's airplanes, caused a collision that resulted in more than $10 million in damages. (Sixth Aff. of Steven P. Zabel, Ex. 4 ¶¶ 3-13, Mar. 29, 2013, Docket No. 73.) At the time of the

---

[1] The Court recites the background only to the extent necessary to rule on the instant motion. A more complete recitation of the facts can be found in the Court's previous orders. *See Nw. Airlines, Inc. v. Prof'l Aircraft Line Serv.*, Civ. No. 11-368, 2013 WL 1197482 (D. Minn. Mar. 25, 2013); *Nw. Airlines, Inc. v. Prof'l Aircraft Line Serv.*, Civ. No. 11-368, 2011 WL 2837677 (D. Minn. July 18, 2011).

accident PALS was insured by Westchester under a liability policy ("the Policy") with a $5 million coverage limit per occurrence. (First Aff. of Robert W. Vaccaro, Ex. B at 3, Feb. 22, 2011, Docket No. 5.) The Policy provides that no person or organization has a right to sue under the Policy unless PALS notifies Westchester as soon as practicable of any occurrence which may result in a claim. (*Id.*, Ex. B at 19-20.) PALS failed to notify Westchester of the incident. (*Id.*, Ex. D.)

## II. STATE COURT LITIGATION

On October 1, 2004, NWA served PALS with a summons and complaint in Minnesota state court, seeking to recover damages NWA incurred as a result of the airplane accident. (Sixth Zabel Aff., Ex. 4 ¶ 14.) On November 15, 2004, NWA and its insurer, Global Aerospace, Inc. ("Global"), notified Westchester's claims handler of the lawsuit and demanded that Westchester tender the $5 million limit of the Policy. (First Aff. of Steven P. Zabel, Ex. 13, Feb. 28, 2011, Docket No. 9.) On November 24, 2004, Westchester's claims handler notified PALS that Westchester was denying coverage under the Policy due to PALS' failure to provide notice of the claims and cooperate under the terms of the Policy. (First Vaccaro Aff., Ex. D.)

After PALS failed to respond to the state court summons and complaint, NWA moved for default judgment. (Sixth Zabel Aff., Ex. 4 ¶¶ 15, 17.) The state court granted NWA's motion on January 10, 2005, awarding $7,295,967 in property damage and $3,312,706 for damages attributed to loss of use of the airplane. (*Id.*, Ex. 4 ¶¶ 23-24.)

The state court judgment was docketed on February 2, 2005, in the amount of $10,635,412.67. (First Zabel Aff., Ex. 15.)

NWA claims that it later recovered $6,545,966.35 from Global, which it contends should be subtracted from the state court judgment to determine the amount of damages for which Westchester is responsible. (*See* Sixth Zabel Aff., Ex. 5; Mem. in Supp. of Mot. for Summ. J. at 28-29, July 30, 2012, Docket No. 50.)[2]

## III. NEVADA LITIGATION

In November 2005 counsel for PALS made a demand against Westchester for a full policy limit defense relating to NWA's default judgment against PALS. (First Vaccaro Aff., Ex. G at 3.) On December 1, 2005, Westchester commenced an action in the United States District Court for the District of Nevada, seeking a declaration that it had no obligation to provide insurance coverage to PALS for the accident. (*Id.*) NWA intervened in the action. (*Id.*, Ex. G. at 4.)

PALS failed to appear in the Nevada litigation, and the court ultimately granted Westchester's motion for summary judgment with respect to PALS. *Westchester Fire Ins. Co. v. Mendez*, Civ. No. 05-1417, 2010 WL 2694960, at *8 (D. Nev. July 1, 2010).

---

[2] NWA claims, and Westchester does not dispute, that NWA received $6,545,966.35 from Global. The document relied on for this proposition states that "The actual amount of the loss sustained by Northwest Airlines, was $7,295,966.35[.] The final amount claimed of [Global] under the terms of the above Policy of insurance by reason of said loss is $535,702.35 (Net of $6,010,264.00 submitted via a Proof of Loss dated 7 January 2003, and the $750,000 deductible)[.]" (Sixth Zabel Aff., Ex. 5.) Although it is unclear from this document what amount NWA actually recovered from Global, in the absence of any argument of the parties to the contrary, the Court will proceed with the $6,545,966.35 figure supplied by NWA.

The court held that "[PALS] violated the Policy's notice and cooperation provisions and Westchester therefore has no duty to defend or indemnify [PALS]." *Id.* at *8. The court also declined to rule on NWA's argument that it was entitled to the Policy's proceeds under the compulsory insurance doctrine even if PALS breached the Policy by failing to give notice to Westchester, finding that the argument exceeded the scope of NWA's intervention. *Id.* at *5-*6. The court explained:

> NWA's interest in this litigation, as defined by NWA's pleading, is to protect any proceeds Westchester may owe to [PALS]. Had [PALS] decided to participate in this case, [it] could not have benefitted from the compulsory insurance doctrine. The compulsory insurance doctrine is designed to protect injured third parties, not the insured. The compulsory insurance doctrine . . . is a direct claim that NWA theoretically could bring against Westchester, but it has nothing to do with whether Westchester owes any duty to [PALS].

*Id.* at *6.

## IV.  SUMMARY JUDGMENT MOTIONS

On December 16, 2010, NWA filed a garnishment action against PALS and Westchester in Minnesota state court, seeking to satisfy the default judgment against PALS with the proceeds of the Policy. (Notice of Removal, Ex. A, Part 1 at 2, Feb. 15, 2011, Docket No. 1.) Westchester removed the action to federal court, and the Court granted NWA's motion for leave to initiate an ancillary garnishment proceeding, join Westchester as a party, and file a supplemental complaint against Westchester. *Nw. Airlines, Inc. v. Prof'l Aircraft Line Serv.*, Civ. No. 11-368, 2011 WL 2837677 (D. Minn. July 18, 2011).

In July 2012, NWA and Westchester both moved for summary judgment on the issue of whether NWA was entitled to receive the proceeds of the Policy in satisfaction of the state court judgment, even though PALS itself had no right to indemnity under the Policy. (NWA's Mot. for Summ. J., July 30, 2012, Docket No. 48; Westchester's Mot. for Summ. J., July 31, 2012, Docket No. 54.)

On March 25, 2013, the Court granted NWA's motion for summary judgment, finding that NWA was entitled to the proceeds of the Policy through application of the compulsory insurance doctrine, which provides that "'[t]he insurer on a compulsory insurance liability policy may be held liable to one injured by the insured notwithstanding the fact that the insured himself has lost his rights under the policy by failure to comply with its terms and conditions.'" *Nw. Airlines, Inc. v. Prof'l Aircraft Line Serv.*, Civ. No. 11-368, 2013 WL 1197482, at *5 (D. Minn. Mar. 25, 2013) (quoting *Nimeth v. Felling*, 165 N.W.2d 237, 239 (Minn. 1969)). The Court also agreed with NWA that the Nevada litigation had no res judicata effect upon these proceedings because the Nevada court's holding that Westchester owed no duty to defend or indemnify PALS in no way "delineated the rights between NWA and Westchester." *Id.* at *8. Finally, of relevance to the present motion, the Court concluded that NWA effectively served Westchester with the summons and complaint for this garnishment action on December 21, 2010. *Id.* at *9.

The Court subsequently entered judgment in NWA's favor, (J., Mar. 26, 2013, Docket No. 69), but omitted the amount of damages to which NWA was entitled in both its March 25 order and the March 26 judgment. NWA now moves to correct that

judgment. NWA seeks correction of the March 26 judgment to bring it into compliance with NWA's request for damages and interest made in its summary judgment submissions. (Mem. in Supp. of Mot. for Summ. J. at 28-29; Sixth Zabel Aff., Ex. 6.)

**ANALYSIS**

**I. SCOPE OF RULE 60(a)**

Federal Rule of Civil Procedure 60 provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a).[3] The judgment entered on March 26, 2013, entered final judgment as to all claims. Although it purported to be a final judgment, the judgment failed to include a ruling on damages. *See Maristuen v. Nat'l States Ins. Co.*, 57 F.3d 673, 678 (8th Cir. 1995) ("A judgment awarding damages but not deciding the amount of the damages or finding liability but not fixing the extent of the liability is not a final decision within the meaning of [28 U.S.C.] § 1291."). This entry of final judgment without specifying the amount of damages

---

[3] Rule 60(a) also provides that after an appeal has been docketed in the appellate court, the district court may only correct mistakes "with the appellate court's leave." Fed. R. Civ. P. 60(a). NWA's motion to alter or correct the judgment was filed slightly earlier on the same day that Westchester filed its notice of appeal to the Eighth Circuit. (Mot. to Alter/Amend/Correct J., Mar. 29, 2013, Docket No. 70; Notice of Appeal to Eighth Circuit, Mar. 29, 2013, Docket No. 76.) The Clerk of Court for the Eighth Circuit filed a letter with the Court noting the presence of a pending postjudgment motion, and indicating that "[a] notice of appeal filed after entry of judgment but before disposition of the post-judgment motion is ineffective until the entry of the order disposing of the last outstanding motion." (Letter, Apr. 4, 2013, Docket No. 79.) The letter further explained that the Eighth Circuit would establish the appropriate appellate briefing schedule only "[u]pon receipt of the ruling disposing of the last outstanding motion." (*Id.*)

qualifies as a "mistake arising from oversight or omission" for purposes of Rule 60(a). *See Chavez v. Balesh*, 704 F.2d 774, 776-77 (5th Cir. 1983) (holding that Rule 60(a) is properly used to correct the district court's inadvertent omission of a liquidated damages award); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994) (explaining that a Rule 60(a) may be used to correct the absence of an award of prejudgment interest, where the failure to award interest was not a reflection of the court's intent). Therefore, the Court concludes that correction of the March 26 judgment under Rule 60(a) is appropriate.

## II. AMOUNT OF DAMAGE

NWA contends that it is entitled to recover damages in the amount of $4,062,706. NWA claims that this amount represents the difference between the $10,635,412.67 state court judgment and the $6,545,966.35 that NWA received from Global. (Mem. in Supp. of Mot. to Alter/Amend/Correct J. at 3, Mar. 29, 2013, Docket No. 72.) The difference between the amount of the state court judgment and the amount NWA received from Global is actually $4,089,446.32.[4] Westchester correctly identified the amount of

---

[4] It appears that in calculating the difference between the state court judgment and the amount received from Global, NWA may have used the amount of damages recited in the state court order ($10,608,673) as opposed to the damages reflected in the notice of docketing of the state court judgment ($10,635,412.67). (*Compare* Sixth Zabel Aff., Ex. 4 ¶¶ 23-24, *with* First Zabel Aff., Ex. 15.) In a phone conference prior to the filing of this Order, both NWA and Westchester agreed that $10,635,412.67 was the correct amount of the state court judgment. Accordingly, the Court has made its damages calculations based on the notice of docketing of the state court judgment, rather than the amount of damages recited in the state court order granting NWA's motion for default.

damages sought as $4,089,446.32, and does not dispute that NWA is entitled to that amount representing the unpaid balance of the state court judgment. (Mem. in Opp. to Mot. to Alter/Amend/Correct J. at 2-3, Apr. 12, 2013, Docket No. 80.) Because $4,089,446.32 represents the amount of the state court default judgment against PALS that NWA has not yet collected, the Court finds that NWA is entitled to recover that amount in damages from Westchester.

## III.    POSTJUDGMENT INTEREST

NWA also requests postjudgment interest, pursuant to Minn. Stat. § 549.09 on the $4,089,446.32 state court judgment running from February 2, 2005 (the date the state court judgment was docketed) until December 21, 2010.[5] Westchester argues that the Policy prevents NWA from recovering any postjudgment interest, because Westchester did not defend PALS in the state court action.

The plain language of the Policy indicates that Westchester is only responsible for paying postjudgment interest with respect to judgments that arise out of claims or suits that Westchester defends. With respect to damages, the Policy provides that Westchester will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (First Vaccaro Aff., Ex. B at 6.) The Policy also requires Westchester to "pay those sums that

---

[5] Postjudgment interest on federal judgments is a procedural matter governed by federal law. *Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 497 (8th Cir. 2001). Although NWA seeks postjudgment interest in federal court, the interest it requests relates to a state court judgment. Consequently, the Court considers NWA's request for postjudgment interest under Minnesota law.

the insured becomes legally obligated to pay as damages because of physical injury to 'aircraft' to which this insurance applies." (*Id.*, Ex. B at 12.) Separate from damages, the Policy addresses the payment of postjudgment interest, providing that "with respect to any claim or suit [Westchester] defend[s]" Westchester will pay "[a]ll interest on the full amount of any judgment that accrues after the entry of the judgment and before [Westchester has] paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." (*Id.*, Ex. B at 14.)

The state court action between NWA and PALS was not a suit in which the Policy would require Westchester to pay postjudgment interest. Westchester did not defend PALS in the state court proceeding, and the Nevada court specifically concluded that Westchester did not owe any duty to indemnify or defend PALS because PALS failed to follow the notification procedures in the Policy. *Westchester Fire Ins. Co.*, 2010 WL 2694960 at *8. Accordingly, under the terms of the Policy, Westchester cannot be compelled to pay postjudgment interest for the state court default judgment entered against PALS.

NWA argues that because the Court applied the compulsory insurance doctrine to allow NWA to recover the Policy's proceeds it must also adopt the legal fiction that Westchester would have had a duty to defend and an accompanying duty to pay postjudgment interest on the state court judgment, had PALS complied with the notice requirements of the Policy. But there is a distinction between application of the compulsory insurance doctrine to allow NWA to obtain the Policy's proceeds and Westchester's duty to defend PALS. The compulsory insurance doctrine is a narrow

exception to the general rule that "'[t]he attaching creditor cannot compel the garnishee to perform his contract with the principal debtor in a manner otherwise than as provided by the contract.'" *Poor Richards, Inc. v. Chas. Olson & Sons & Wheel Serv. Co.*, 380 N.W.2d 225, 228 (Minn. Ct. App. 1986) (quoting *Bacon v. Felthous*, 115 N.W. 205, 207 (Minn. 1908)); *see also Royal Indem. Co. v. Olmstead*, 193 F.2d 451, 453 (9th Cir. 1952). Under the doctrine, the insurer may be liable to an injured party "notwithstanding the fact that the insured himself has lost his rights under the policy by failure to comply with its terms and conditions." *Nimeth v. Felling*, 165 N.W.2d 237, 239 (Minn. 1969). Therefore, the compulsory insurance doctrine relates only to the rights of the injured third party, and has no bearing on the insurer's obligation to its insured. Consequently, application of the compulsory insurance doctrine by the Court did not impose an obligation upon Westchester as to PALS such that Westchester could be compelled to pay postjudgment interest on the state court judgment NWA obtained against PALS. Instead, the judgment obtained by NWA against Westchester in this action is unrelated to Westchester's obligation to PALS in the state court action.

This distinction between application of the compulsory insurance doctrine to allow NWA to obtain the Policy's proceeds and Westchester's duty to defend PALS was made clear by the Nevada court when it stated that "[t]he compulsory insurance doctrine . . . is a direct claim that NWA theoretically could bring against Westchester, but it has nothing to do with whether Westchester owes any duty to [PALS]." *Westchester Fire Ins. Co.*, 2010 WL 2694960 at *6. The Court reiterated this reasoning, in finding that the Nevada court judgment had no res judicata effect in the present garnishment action. *See Nw.*

*Airlines, Inc.*, 2013 WL 1197482 at *7-*8. The payment of postjudgment interest on the Policy is an obligation specifically tied to Westchester's duty to defend. Because Westchester had no duty to, and did not, defend PALS in the underlying state court action, the Court will decline to award postjudgment interest on the state court judgment.[6]

Even in the absence of the Policy language providing that Westchester is responsible for postjudgment interest only with respect to claims or suits it defends, the Court would conclude that postjudgment interest is inappropriate, because Westchester was not a party to the state court judgment, and had no obligation to pay a portion of that judgment until this Court's March 25 summary judgment ruling. The purpose of postjudgment interest is "to compensate a plaintiff 'for the loss of the use of money **to which plaintiff has been entitled** since the time the verdict was rendered.'" *Staab v. Diocese of St. Cloud*, 830 N.W.2d 40, 47 (Minn. Ct. App. 2013) (emphasis added) (quoting *McCormack v. Hankscraft Co.*, 161 N.W.2d 523, 524 (Minn. 1968)). Generally interest is available "'only if damages are 'readily ascertainable' and liability issues are determined.'" *Id.* (quoting *Bilotta by Cutting v. Kelley Co.*, 358 N.W.2d 679, 681 (Minn.

---

[6] Additionally, the Court notes that it would be inappropriate to award postjudgment interest in contradiction of the clear language of the policy based on only a partial reconstruction of events that NWA hypothesizes might have occurred if PALS had notified Westchester of the state court action in compliance with the Policy. Had PALS actually notified Westchester of the lawsuit triggering a duty to defend, it is possible to imagine numerous events that may have occurred and impacted an interest payment. For example, if PALS had timely notified Westchester of the state court action and Westchester had defended PALS in that action, it seems likely that the 2005 state court judgment would have been paid by Westchester long ago, rather than allowing interest to accrue for five years. At the very least, Westchester would have had notice that it was required to pay that judgment, and made an informed choice between paying the judgment at that time or allowing postjudgment interest to accrue at the rate of ten percent.

Ct. App. 1984)). In *Staab*, for example, a jury had awarded fifty-percent of the fault to Richard Staab, who was not a party to the litigation, and fifty-percent to the diocese. The court found the plaintiff was not entitled to interest on the entire amount of the judgment from the time of the verdict, explaining:

> Because the district court had no jurisdiction to render Richard Staab's obligation of the jury verdict legally enforceable, [plaintiff] was not entitled to that portion of the verdict – and the diocese was not liable to pay it – at the time the jury returned a verdict.
>
> It was not until [plaintiff] moved the court for reallocation and the district court made a finding of uncollectibility that the diocese was legally required to pay Richard Staab's portion of the jury verdict. Thus, interest did not begin to accrue until [plaintiff] became entitled to the use of the money upon the district court's order for reallocation.

*Id.* at 47 (internal citation omitted). Similarly, here Westchester had no obligation to pay the default state court judgment entered against PALS until this Court determined that NWA had a right to the proceeds of the Policy independent of PALS. The Minnesota Supreme Court found, in the context of a stipulated judgment, that interest did not accrue against the insurer prior to the garnishment proceedings because:

> [p]laintiff's stipulated judgment was not conclusive on the insurer until the insurer had an opportunity to litigate the issues of whether it was bound by the judgment. It was not until the garnishment proceeding . . . that a judicial determination was made that [the insurer] was liable for $50,000 on the stipulated judgment.

*Miller v. Shugart*, 316 N.W.2d 729, 736 (Minn. 1982) (footnote omitted). Allowing plaintiffs to recover postjudgment interest in this situation, where plaintiffs must pursue additional litigation to collect funds from non-parties to the original litigation, would create an incentive for plaintiffs to delay commencing an action to recover the judgment.

Plaintiffs could choose to delay bringing the recovery action, allowing interest at the rate of ten percent to accrue for long periods of time before the entity ultimately required to pay is aware that it will be held responsible for the judgment.[7] Because Westchester had no liability for the state court judgment until the Court granted summary judgment in NWA's favor in this federal litigation, the Court will decline to award postjudgment interest on the state court judgment.

## IV. PREJUDGMENT INTEREST

NWA also requests prejudgment interest under Minn. Stat. § 549.09, running from December 21, 2010, the commencement of this lawsuit, until March 26, 2013, when the Court entered judgment. In diversity cases, Minnesota law applies to the issue of prejudgment interest. *See Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597 (8th Cir. 2007). Minnesota Statutes § 549.09 provides that "preverdict, preaward, or prereport interest on pecuniary damages shall be computed [in the amount of ten percent per year] from the time of the commencement of the action . . . or the time of a written notice of claim, whichever occurs first." Minn. Stat. § 549.09(b), (c)(2). Prejudgment interest is intended "to compensate the plaintiff for the loss of use of his money, and, by

---

[7] Furthermore, NWA's request for postjudgment interest appears to be at odds with the purpose of postjudgment interest. Postjudgment interest is intended to compensate a plaintiff for the period of time during which plaintiff was entitled to, but did not have possession of, the damages awarded. As such, postjudgment interest typically runs until the time the judgment has been paid. Here, however, NWA asked for postjudgment interest running from the entry of the state court judgment, until commencement of the federal court action, even though at the time of the federal action the state court judgment remained unpaid. NWA has cited no authority for the proposition that postjudgment interest can run against an insurance company that appropriately refused to defend a state court action then cease once a garnishment proceeding has begun.

implication, to deprive the defendant of any gain resulting from the use of money rightfully belonging to the plaintiff" as well as "to promote settlement." *Burniece v. Ill. Farmers Ins. Co.*, 398 N.W.2d 542, 544 (Minn. 1987).

Westchester argues that it is not required to pay prejudgment interest under a portion of the Policy providing that Westchester will pay "prejudgment interest awarded against the insured on the part of the judgment Westchester pays" only "with respect to any claim or suit [Westchester] defend[s]." (*Id.*, Ex. B at 14.) The Policy does not shield Westchester from an obligation to pay prejudgment interest in this case for two reasons. First, the present garnishment action is a suit that Westchester is defending. Second, any prejudgment interest this Court awards with respect to the present garnishment action is not against PALS, the insured, but is instead awarded against Westchester itself. Therefore, the Policy's limitations on the assessment of prejudgment interest are inapplicable. Instead, the Court finds that prejudgment interest running from the commencement of this garnishment action is appropriate under Minnesota law. The Minnesota Supreme Court has held, in the context of stipulated judgments, that "[t]he stipulated judgment sought to be enforced under the garnishee's indemnity policy does . . . represent pecuniary damages, and, consequently, it seems to us this is the kind of action where prejudgment interest applies from the time of the commencement of the garnishment action to entry of the garnishment judgment." *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 280 (Minn. 1990); *see also Buysse v. Baumann-Furrie & Co.*, 498 N.W.2d 289, 292-93 (Minn. Ct. App. 1993). Accordingly, the Court will order

Westchester to pay prejudgment interest on NWA's damage award from December 21, 2010 through March 26, 2013.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Creditor Northwest Airlines, Inc.'s Motion to Alter/Amend/Correct Judgment [Docket No. 70] is **GRANTED in part** and **DENIED in part** as follows:

1. The March 26, 2013 Judgment [Docket No. 69] is amended to include the order that Creditor Northwest Airlines, Inc. is entitled to payment from Garnishee Westchester Fire Insurance Company in the amount of $4,089,446.32, plus prejudgment interest at the 10% rate set forth in Minn. Stat. § 549.09(c)(2), from December 21, 2010 through March 26, 2013.

2. Creditor Northwest Airlines, Inc.'s request for postjudgment interest on the February 2, 2005 state court judgment is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: December 4, 2013                      ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                    United States District Judge